# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARCH INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>   v.<br><br>BIOMETRIC IMPRESSIONS CORP., PAUL SAYAS, and BENIAMIN VARO.<br><br>        Defendants. | Case No. |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Arch Insurance Company ("Arch"), by and through its attorneys, BatesCarey LLP, and for its Complaint for Declaratory Judgment states as follows:

## NATURE OF THE ACTION

1. This is an insurance coverage dispute with respect to Arch's coverage obligations under three consecutive general liability insurance policies (individually, the "Policy" and collectively, the "Policies") it issued to Biometric Impressions Corp. ("BIC") for a class action lawsuit Defendants Paul Sayas and Beniamin Varo (collectively, the "Claimants") have filed against BIC for its alleged violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 et seq. (the "Lawsuit"). The Policies provide traditional commercial general liability coverage including Coverage B for "personal injury"[1] and "advertising injury." By endorsement, the Policies also provide Coverage D for errors and omissions committed by BIC relating to its security and investigative operations.

---

[1] Terms in quotes are defined in the Policies.

2. Arch accepted coverage of the Lawsuit under Coverage D in the Policies. However, BIC and the Claimants assert that Arch owes coverage under Coverage B in the Policies and dispute that Coverage D is subject to a $1 million limit under each Policy.

3. Arch therefore seeks a declaration that it owes no coverage under Coverage B in the Policies and a declaration that the $1,000,000 limit of liability applies to Coverage D in each of the Policies, such that the maximum amount potentially available under the Policies for the Lawsuit is $3,000,000, i.e., $1,000,000 per Policy.

## THE PARTIES

4. Plaintiff Arch is an insurance company organized under the laws of Missouri with its principal place of business in New Jersey.

5. Upon information and belief, Defendant BIC is a corporation organized under the laws of Illinois with its principal place of business in Illinois.

6. Defendant Paul Sayas ("Sayas") is and at all relevant times was domiciled in Illinois and is therefore a citizen of Illinois. Sayas is one of the named plaintiffs in the underlying BIPA lawsuit that was filed in the Circuit Court of Cook County, Illinois.

7. Defendant Beniamin Varo ("Varo") is and at all relevant times was domiciled in Illinois and is therefore a citizen of Illinois. Varo is one of the named plaintiffs in the underlying BIPA lawsuit that was filed in the Circuit Court of Cook County, Illinois.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), 2201, and 2202, as complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and Arch seeks declaratory relief with respect to a case of actual controversy within this Court's jurisdiction.

9.  Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), in that Defendants are residents within this District, and a substantial part of the events or omissions giving rise to this action occurred within this District.

## **THE POLICIES**

10. Arch issued the Policies to BIC as follows: Policy No. BIPKG0154600 (effective August 15, 2016 to August 15, 2017); Policy No. BIPKG0154601 (effective August 15, 2017 to August 15, 2018); and Policy No. BSPKG0325000 (effective August 15, 2018 to August 15, 2019). True and correct copies of the Policies are attached hereto as Exhibits A through C.

11. Coverage B of the Commercial General Liability ("CGL") Coverage Section of the Policies, as amended by endorsement, provides, in relevant part, as follows:

> **COVERAGE B – PERSONAL INJURY OR ADVERTISING INJURY LIABILITY**
>
> **1. Insuring Agreement**
>
>> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:
>>
>> \*   \*   \*
>>
>> b.  This insurance applies to "personal injury" or "advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

12. Pursuant to endorsement, the Policies define "advertising injury" and "personal injury" as follows:

> 1. "Advertising injury" means injury arising out of one or more of the following offenses:

3

    a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    b. Oral or written publication of material that violates a person's right to privacy;
    c. Misrepresentation of advertising ideas or style of doing business; or
    d. Infringement of copyright, title or slogan.

2. "Personal injury" means injury other than "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention, or imprisonment;
    b. Malicious prosecution;
    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises, that a person occupies, by or on behalf of its owner, landlord or lessor;
    d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or
    e. Oral or written publication of material that violates a person's right to privacy.

13. By endorsement, Section I – Coverages of the Policy – is amended to include Coverage D, Errors & Omissions Coverage ("Coverage D").

14. The Insuring Agreement for Coverage D provides in relevant part:

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of errors or omissions committed by the insured relating to the services described in the Declarations. We will have the right and duty to defend any suit seeking those damages. We may at our discretion investigate any claim or suit that may result. But:

        (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (Section III); and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A, B or D or medical expenses under Coverage C.

4

> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A, B AND D.
>
> b. This insurance applies only if the error or omission takes place during the policy period.

15. The services described in the Declarations are "security" and "investigative operations."

## THE BIPA LAWSUIT

16. On January 8, 2020, Sayas, individually and on behalf of other similarly situated individuals, initiated the Lawsuit by filing a Class Action Complaint (the "CAC") against BIC in the Circuit Court of Cook County, Illinois under case number 2020CH00201. A copy of the CAC is attached hereto as Exhibit D.

17. In the CAC, Sayas asserted one count for BIC's alleged BIPA violations by capturing or collecting Sayas' and the Class' fingerprints without: first creating a written policy, made available to Sayas and the Class, establishing a retention schedule and destruction guidelines for its possession of biometric identifies and biometric information (Ex. D, ¶ 37); first informing them in writing that BIC was doing so (*Id.*, ¶ 38); first informing them in writing of the specific purpose and length of term for which their biometric data was being collected, stored and used (*Id.*, ¶ 39).

18. On July 24, 2020, and after BIC had filed a motion to dismiss the CAC, Sayas filed a First Amended Complaint (the "FAC"), which added Varo as a named plaintiff. A copy of the FAC is attached as Exhibit E.

19. Like the CAC, in the FAC the Claimants asserted one count for BIC's alleged BIPA violations by capturing or collecting Claimants' and the Class' fingerprints without: first creating a written policy, made available to Claimants and the Class, establishing a retention schedule and

destruction guidelines for its possession of biometric identifies and biometric information (Ex. E, ¶ 46); first informing them in writing of the specific purpose and length of term for which their biometric data was being collected, stored and used (*Id.*, ¶ 47).

20. On August 21, 2020, BIC filed a motion to dismiss the FAC. The Claimants sought and were granted leave to take discovery related to BIC's motion to dismiss.

21. BIC produced documents, answered interrogatories, and BIC's President and CEO sat for a deposition.

22. The Claimants also subpoenaed several third-party entities for both documents and depositions.

23. Discovery related to the motion to dismiss was completed in late 2021.

24. On December 28, 2021, the Claimants filed an Unopposed Motion for Leave to File a Second Amended Class Action Complaint to "add additional damages allegations and to more plainly state their causes of actions which [Claimants] believe will help settlement negotiations." A copy of the Unopposed Motion for Leave to File a Second Amended Class Action Complaint is attached hereto as Exhibit F.

25. On January 7, 2022, and after being granted leave, the Claimants filed the Second Amended Complaint (the "SAC") in the Lawsuit. A copy of the SAC is attached as Exhibit G.

26. The SAC asserts the following four counts: Count I for Violations of BIPA, 740 ILCS 14/15(a) by capturing or collecting the Claimants' and the Class' fingerprints without first creating a written policy, made available to the Claimants and the Class, establishing a retention schedule and destruction guidelines for its possession of biometric identifiers and biometric information (Ex. G, ¶ 48); Count II for Violations of BIPA 740 ILCS 14/15(b)(1) by capturing or collecting the Claimants' and the Class' fingerprints without first informing them in writing that

6

their biometric data was being collected and/or stored (*Id.*, ¶ 56); Count III for Violations of BIPA 740 ILC 14/15(b)(2) by capturing or collecting the Claimants' and the Class' fingerprints without first informing them in writing of the specific purpose and length of term for which their biometric data was being collected, stored and used (*Id.*, ¶ 64); and Count IV for Violations of BIPA 740 ILCS 14/15(b)(3) by not obtaining a written release executed by the Claimants' and the Class (*Id.*, ¶ 74) .

27. The SAC does not include a count asserting a violation under 740 ILCS 14/15(d).

28. In each count in the SAC, the Claimants added for the first time allegations that, as a result of BIC's conduct, they "suffered personal injury, advertising injury, and/or a violation of privacy resulting in emotional upset [sic], mental anguish, and mental injury." (*Id.*, ¶¶ 51, 59, 67, and 75).

29. Upon information and belief, the allegations of the SAC referring to alleged personal injury, advertising injury and/or a violation of privacy were added in an attempt to "plead into coverage" under Coverage B of the Policies.

30. As such, those allegations should be disregarded for the purpose of determining Arch's coverage obligations under the Policies.

## THE COVERAGE DISPUTE

31. On March 26, 2020, Arch accepted defense of the Lawsuit under Coverage D.

32. In subsequent communications, Arch continued to accept defense of the Lawsuit under Coverage D based on the FAC and SAC and that Coverage D is subject to a $1,000,000 limit in each Policy.

33. BIC and the Claimants assert that Coverage B and the $3 million aggregate limit of liability in the Policies apply.

34. An actual, present and bona fide controversy exists between Arch, BIC, and the Claimants with respect to whether there is insurance coverage for the Lawsuit under the Policies.

35. A judicial declaration is necessary to establish the parties' rights and duties, if any, under the Policies.

## COUNT I – DECLARATORY JUDGMENT
### No "Personal Injury" or "Advertising Injury"

36. Arch repeats and incorporates by reference herein the allegations in Paragraphs 1 through 35 of this Complaint.

37. Subject to its terms and conditions, Coverage B of the Policies, as amended by endorsement, provides in relevant part that Arch will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury,"

38. "Personal injury" and "advertising injury" is defined to include "[o]ral or written publication of material that violates a person's right to privacy."

39. The Lawsuit seeks statutory damages because BIC allegedly captured and collected the Claimants' and the other class members' fingerprints without proper notification and authorization in violation of BIPA.

40. The Lawsuit does not seek damages because of any "personal injury" or "advertising injury," including any "oral or written publication of material that violates a person's right to privacy."

41. The stray allegations that the Claimants and other class members have "suffered personal injury, advertising injury, and/or a violation of privacy resulting in emotional upset [sic], mental anguish, and mental injury" fail as there are no allegations of any "publication."

8

42. In addition, those allegations are nothing more than an attempt to "plead into coverage" and therefore must be disregarded for determining Arch's coverage obligations under the Policies.

43. As a result, the Lawsuit does not seek damages because of "personal injury" or "advertising injury."

44. Accordingly, Arch does not owe a duty to defend or indemnify BIC under Coverage B of the Policies in connection with the Lawsuit.

## COUNT II – DECLARATORY JUDGMENT
### Violation of Law Exclusion

45. Arch repeats and incorporates by reference herein the allegations in Paragraphs 1 through 35 of this Complaint.

46. Section I.B.2.p. of the Policies, as amended by endorsement provides that Coverage B does not apply to:

> **p. Recording And Distribution Of Material Or Information In Violation Of Law**
>
> "Personal injury" or "advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
>
> (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
>
> (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or
>
> (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending,

> transmitting, communicating or distribution of material or information.

(the "Violation of Law Exclusion").

47. The Lawsuit seeks statutory damages because of BIC's alleged violation of BIPA, which is an Illinois statute that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information, i.e. biometric identifiers and biometric information.

48. As such, to the extent the Lawsuit alleges "personal injury" or "advertising injury", which it does not, coverage is precluded by the Violation of Law Exclusion.

## COUNT III– DECLARATORY JUDGMENT
### $1,000,000 Each Occurrence Limit Is the Maximum Applicable Limit Under Coverage D in each of the Policies

49. Arch repeats and incorporates by reference herein the allegations in Paragraphs 1 through 35 of this Complaint.

50. Section III – LIMITS OF INSURANCE of the Policies, as amended by endorsement, provide that "the Each Occurrence Limit is the most we will pay for the sum of… c. Damages under Coverage D."

51. The Each Occurrence Limit in each Policy is $1,000,000.

52. Accordingly, the maximum amount available under Coverage D in the Policies for the Lawsuit is $3,000,000, i.e., $1,000,000 per Policy.

## PRAYER FOR RELIEF

WHEREFORE, Arch respectfully requests that this Court enter a judgment in its favor and against Defendants, awarding the following relief:

a. A declaration that there is no coverage available under Coverage B of each of the Policies;

    b. A declaration that the maximum amount available under Coverage D of each of the Policies is the $1,000,000 Each Occurrence Limit;

    c. For such other and further relief at law or in equity that the Court deems just and proper.

DATED:    December 29, 2022    ARCH INSURANCE COMPANY

By: /s/ David F. Cutter
One of its Attorneys

David F. Cutter
Abigail E. Rocap
Emily R. Tripicchio
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, Illinois 60606
Ph.:    312-762-3100
Fax:    312-762-3200

3078442